UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS FRANCISCO GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden of Otay Mesa Detention Center, et al.,<br><br>Respondents. | Case No.: 25-CV-3547 JLS (MSB)<br><br>**ORDER GRANTING WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Marcos Francisco Gonzalez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court is Respondents Christopher LaRose's (Senior Warden of Otay Mesa Detention Center), Daniel A. Brightman's (San Diego Field Office Director, ICE/ERO), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Sirce Owen's (Acting Director for Executive Office for Immigration Review), Kristi Noem's (Secretary of the U.S. Department of Homeland Security), and Pamela Bondi's (Attorney General of the United States) (collectively, "Respondents") Return in Opposition to the Habeas Petition ("Ret.," ECF No. 5), and Petitioner's Traverse ("Traverse," ECF No. 6). *See generally* Docket. For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1).

## BACKGROUND

Petitioner, a Mexican national, entered the United States in 2002 without inspection. Pet at 4. In April of 2016, Petitioner was arrested by ICE and released on an order of release on his own recognizance. *Id.* Since his release, Petitioner "has built a life in the United States including getting married and having children, as well as building extensive ties to his community in North County San Diego." *Id.* Petitioner has two children, "both of whom have disabilities necessitating individualized education plans with extra services and special education in school." *Id.* Petitioner has complied with all conditions of his release and attended all check-in appointments and court hearings, "until his removal proceedings were eventually dismissed on October 30, 2024." *Id.* On March 15, 2023, Petitioner and his U.S. citizen wife began the consular process to obtain his lawful permanent residency and filed a Form I-130 Petition. *Id.* at 5. On December 2, 2025, Petitioner and his wife were attending the interview on the Form I-130 Petition when ICE arrested Petitioner. *Id.* The USCIS "issued an approval notice of the Form I-130 Petition on that same day, December 2, 2025." *Id.* Petitioner remains in custody at the Otay Mesa Detention Center. *Id.* at 2.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention— federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*,

25-CV-3547 JLS (MSB)

1    138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal.

2    2018) (citations omitted).

3                                                    **DISCUSSION**

4           Respondents first argue that this Court lacks jurisdiction under 8 U.S.C. § 1225(g)

5    and § 1225 (b)(9) and that Petitioner failed to exhaust his administrative remedies.  Ret. at

6    7–11.  Respondents then argue, if the Court finds jurisdiction and waives exhaustion, that

7    Petitioner's claims fail on the merits because Petitioner is subject to mandatory detention

8    under 8 U.S.C. § 1225.  *Id.* at 11–19.  Petitioner argues that the summary revocation of his

9    release and continued detention violates the Due Process Clause, § 1226(a), and the APA.

10   Pet. at 31–34.

11   **I.      Jurisdiction**

12          Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or

13   claim by or on behalf of any alien arising from the decision or action by the Attorney

14   General to commence proceedings, adjudicate cases, or execute removal orders against any

15   alien under this chapter."  8 U.S.C. § 1252(g).  Respondents claim that Petitioner's claims

16   "necessarily arise from the decision or action by the Attorney General to commence

17   proceedings and adjudicate cases."  Ret. at 8 (simplified).  The Court disagrees.

18          Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions

19   that the Attorney General may take: her 'decision or action' to '*commence* proceedings,

20   *adjudicate* cases, or *execute* removal orders.'"  *Ibarra-Perez v. United States*, No. 24-631,

21   2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-*

22   *Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)).  Section 1252(g) "does not

23   prohibit challenges to unlawful practices merely because they are in some fashion

24   connected to removal orders."  *Id.* at *7.  Section 1252(g) does not bar due process claims.

25   *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners'

26   objective was not to review the merits of their proceeding, but rather "to enforce their

27   constitutional rights to due process in the context of those proceedings").

28

25-CV-3547 JLS (MSB)

1     Here, Petitioner does not challenge the decision to commence removal proceedings

2  or any act to adjudicate or execute a removal order.  Traverse at 2.  Rather, Petitioner is

3  challenging the legality of his parole revocation, alleged wrongful arrest, and continued

4  detention.  *Id.*  Petitioner is enforcing his "constitutional rights to due process in the context

5  of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal

6  order."  *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D.

7  Cal. Sept. 3, 2025).  Therefore, § 1252(g) does not strip the Court of jurisdiction.  *See, e.g.*,

8  *Navarro Sanchez v. Larose et al.*, 25-cv-2396 JES (MMP), 2025 WL 2770629, at *2 (S.D.

9  Cal. Sept. 26, 2025) (finding the Court had jurisdiction in a similar matter); *Noori v. Larose*

10  *et al.*, 25-cv-1824 GPC (MSB), 2025 WL 2800149, at *7–8 (S.D. Cal. Oct. 1, 2025) (same).

11     Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact,

12  including interpretation and application of constitutional and statutory provisions, *arising*

13  *from any action taken or proceeding brought to remove an alien from the United States*

14  under this subchapter shall be available only in judicial review of a final order under this

15  section."  8 U.S.C. § 1252(b)(9) (emphasis added).  Respondents argue that Petitioner is

16  challenging "the government's decision and action to detain" during removal proceedings.

17  Ret. at 10.  Respondents assert that the decision to detain Petitioner arises from the

18  "decision to commence removal proceedings" and thus is "an action taken . . . to remove

19  [him] from the United States."  *Id.* (quoting 8 U.S.C. § 1252(b)(9)).  Respondents conclude

20  that the Court lacks jurisdiction under § 1252(b)(9).  *Id.*  Again, the Court disagrees.

21     Section 1252(b)(9) "has built-in limits, specifically, claims that are independent of

22  or collateral to the removal process do not fall within the scope" of § 1252(b)(9).

23  *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 810 (9th

24  Cir. 2020) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) (internal

25  quotation marks omitted)).  "[C]laims challenging the legality of detention pursuant to an

26  immigration detainer are independent of the removal process."  *Id.*; *see also Garcia*, 2025

27  WL 2549431, at *3–4; *Nielson v. Preap*, 586 U.S. 392, 402 (2019) (quoting *Jennings*, 583

28  U.S. at 294) (finding § 1252(b)(9) did not strip the court of jurisdiction because the

4

petitioners were "not asking for review of an order of removal; they [were] not challenging the decision to detain them in the first place or to seek removal (as opposed to the decision to deny them bond hearings); and they [were] not even challenging any part of the process by which their removability w[ould] be determined").

Here, as discussed above, Petitioner is not challenging the Department of Homeland Security's decision to commence removal proceedings or to adjudicate removability. *See* Traverse at 2. Petitioner is instead challenging the "the Respondents' re-detention and revocation of his conditional parole." *Id.* Therefore, § 1252(b)(9) also does not strip the Court of jurisdiction.

## II.    Exhaustion

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

25-CV-3547 JLS (MSB)

The Court, following other courts in this District, finds that exhaustion would be futile because the Board of Immigration Appeals is obligated to apply the binding precedent of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2). *See, e.g.*, *Garcia*, 2025 WL 2549431, at \*4–5; *Valdovinos v. Noem*, No. 25-CV-2439 TWR (KSC), slip op. at 9 (S.D. Cal. Sept. 25, 2025). Therefore, the Court concludes that exhausting administrative remedies would be futile.

## III. Merits

### A. Due Process

Petitioner argues that the summary revocation of his parole without justification or consideration of his individualized circumstances violates the Due Process Clause. Pet. at 31–32. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at \*3 (N.D. Cal. July 25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

25-CV-3547 JLS (MSB)

1    "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending

2    removal proceedings, after that individual is released from custody [he] has a protected

3    liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at \*3 (citing

4    *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at \*2 (N.D. Cal. May 6, 2022)).

5         Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225

6    Petitioner is subject to mandatory detention and therefore his alleged statutory and

7    constitutional violations fail.[1]  Ret. at 11.  The Court disagrees.  Upon arrival, Petitioner

8    was determined to not be a danger to the community or a flight risk and was granted an

9    Order of Release on Own Recognizance, a form of conditional parole.  Pet. at 4.  Petitioner

10   is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in

11   the United States since 2002.  *Id.*  Petitioner has complied with all conditions of his release

12   and has attended all required ICE check-ins and court hearings.  *Id.*  Further, Petitioner is

13   married to a U.S. citizen and had his Form I-130 Petition approved the same day of his

14   arrest.  *Id.* at 5.  Petitioner is not merely an "applicant for admission" at the border with

15   minimal due process rights; Petitioner has a protected liberty interest in remaining out of

16   custody.  *See, e.g.*, *Pinchi*, 2025 WL 2084921, at \*4 ("[Petitioner's] release from ICE

17   custody after her initial apprehension reflected a determination by the government that she

18   was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest

19   in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL

20   2800149, at \*10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present

21   in our country for over a year. This substantial amount of time indicates he is afforded the

22   Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-

23   cv-1206-KES-SKO (HC), 2025 WL 2817795, at \*5 (E.D. Cal. Oct. 3, 2025) (finding

24   petitioner had a protected liberty interest in his release).

25

26

27   [1] If Respondents unlawfully terminated Petitioner's parole, which the Court finds to be so, then the Court
     need not address whether Petitioner is subject to mandatory detention under § 1225(b), as Respondents

28   cannot detain him without first properly revoking his parole.  *See Y-Z-L-H v. Bostock*, No. 25-cv-965-SI,
     2025 WL 1898025, at \*11 (D. Or. July 9, 2025).

25-CV-3547 JLS (MSB)

1    As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his conditional parole. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with his family and continuing the process of adjusting status to a lawful permanent resident. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for revocation or giving him an opportunity to be heard. Pet. at 5. Since DHS's initial determination that Petitioner should be paroled because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").

Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, married a U.S. citizen, and is working towards becoming a lawful permanent resident.  Pet at 4–5.  "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings."  *Saravia*, 280 F. Supp. 3d at 1760.  "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ."  *Id.*  Respondents, failing to address Petitioner's Due Process argument in their response, do not point to any material circumstances that have changed that would warrant reconsideration of his parole.  *See generally* Ret.  "Where, as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention."  *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low."  *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").  Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing.  *See generally* Ret.

Therefore, because Respondents detained Petitioner by revoking his parole in violation of the Due Process Clause, his detention is unlawful.  *See, e.g., Alegria Palma v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025) (granting a TRO based on a procedural due process challenge to a revocation of parole without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting

a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[2]

### B. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Pet. at 34. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

The Court will consider an application requesting reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting order of release on own recognizance. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before a neutral decision

---

[2] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have found violations of the APA based on similar grounds. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation); *Noori*, 2025 WL 2800149, at *3 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA.").

25-CV-3547 JLS (MSB)

1  maker to determine whether detention is warranted.  The Government shall bear the burden

2  of establishing, by clear and convincing evidence, that Petitioner poses a danger to the

3  community or a risk of flight.[3]  The Parties are **ORDERED** to file a Joint Status Report by

4  December 29, 2025, confirming that Petitioner has been released. Lastly, Petitioner's

5  attorney is directed to submit an attorney fee application and corresponding billing records

6  within thirty (30) days of this Order, and Respondents are instructed to file any opposition

7  within fourteen (14) days of Petitioner's attorney fee application.

8       **IT IS SO ORDERED.**

9  Dated:  December 23, 2025

10

11                                        Hon. Janis L. Sammartino
                                          United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27  [3] This relief has been granted in similar matters.  *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025
28  WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez
    v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).

11